

```
         FILED          RECEIVED
         ENTERED        SERVED ON
                        COUNSEL/PARTIES OF RECORD

              APR 2 6 2017

         CLERK US DISTRICT COURT
            DISTRICT OF NEVADA
BY:_____ DEPUTY
```

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

SETH SHAW,

      **Petitioner,**

vs.                                                    Case No.

ROI LAND INVESTMENTS, LTD.,

      **Respondent.**
_____/

2:17-cv-01165-JAD-VCF

## PETITION FOR CONFIRMATION OF
## ARBITRATION AWARD AND ENTRY OF JUDGMENT

Petitioner, Seth Shaw ("Shaw"), hereby petitions this Court for an order, pursuant to 9 U.S.C.A. §9, confirming the arbitration award entered on March 30, 2017 ("Award"), in Arbitration Number: 01-15-0005-6446, in favor of Shaw and against Respondent, ROI Land Investments, LTD., ("Respondent"). A copy of the Award is attached hereby as Exhibit A.

### PARTIES AND JURISDICTION

1.     Petitioner is an individual who resides in New York.

2.     Respondent is a corporation that is incorporated under the laws of the State of Nevada.

3.     This Court has jurisdiction pursuant to 9 U.S.C. §9 and 28 U.S.C. §1332, because there is diversity of citizenship and the amount in controversy exceeds $75,000.

4.     Venue is proper because Respondent's is domesticated in the State of Nevada.

5.     The parties agreed to arbitrate their dispute and agreed to appoint William H. Baker, as arbitrator. The parties' agreement ("Agreement"), which includes their agreement to arbitrate, is attached hereto as Exhibit B.

6.     On March 30, 2017, Arbitrator, William H. Baker, entered the Final Award

ordering Respondent to pay Shaw $861,859.57, which includes the Award, the excess portion of costs Petition paid for arbitration fees and attorneys' fees.

7. Respondent has not paid Shaw any amount due under the Award.

8. Pursuant to the Federal Arbitration Act and applicable law, Shaw is entitled to obtain immediate and summary confirmation of the Award.

## ANALYSIS

9. The Federal Arbitration Act provides that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. §207.

10. None of the grounds available for refusal or deferral of recognition or enforcement of an award are applicable to the Final Award.

11. Therefore, pursuant to 9 U.S.C. §207, Petitioner requests that this Court confirm and recognize the Award and enter judgment in favor of Petitioner and against Respondent in the amount of the Award.

12. Under the terms of the Award, Petitioner is entitled to $755,125.00 as their award for damages; $103,109.57 for attorneys' fees and $3,625.00 for the reimbursement of fees and expenses in excess of the apportioned costs previously incurred by Shaw, for a total of $861,859.57.

13. By reason of the foregoing, the Court should issue an order confirming the Award and direct that judgment be entered thereon.

WHEREFORE, Petitioner, Seth Shaw, respectfully requests that this Court:

1. Issue an order pursuant to 9 U.S.C. §207 confirming the Award and entering a judgment in favor of Petitioner and against Respondent in accordance with the Award.

2. Directing the entry of judgment on the Award in favor of Petitioner and against Respondent in the amount of $861,859.57, including interest, which is comprised of the Award, attorneys' fees, and the excess portion of Arbitration fees paid by Petitioner.

3. Awarding Petitioner the costs of this action;

4. Granting Petition such other and further relief as the Court deems just and proper.

*Respectfully submitted,*

SETH SHAW
1290 Weston Road, Suite 218
Weston, Florida 33326
sethsms47@aol.com
notices@pkslegal.com
Tel: (954) 384-0998/Fax: (954) 384-5390

By: /s/ Seth Shaw

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via email this 24th day of April, 2017 to Patrick Ogle, Esq. at patrick@nvcorplaw.com.

By: /s/ Seth Shaw

# INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
# INTERNATIONAL ARBITRATION TRIBUNAL

SETH SHAW,

    **Claimant,**

vs.    Arbitration No. 02-15-0005- 6466

ROI LAND INVESTMENTS, LTD.,

    **Respondent.**

## FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and effective as of May 1, 2014, and having been duly sworn, and having duly heard the proofs and allegations of the parties, and having issued Partial Final Award on February 23, 2017, and having reserved jurisdiction to consider calculation and allocation of arbitration fees and costs, do hereby, issue FINAL AWARD, as follows:

### Procedural Background

On February 23, 2017, the Arbitrator issued a Partial Final Award in which he ruled that Claimant was entitled to recover $755,125.00 from Respondent on his breach of contract claim.

EXHIBIT A

1

The contract provides for the award or reasonable attorneys fees to the winning party. Therefore, the Arbitrator ordered Claimant to submit proof of his attorneys' fees by March 15, 2017, and Respondent to submit any opposition by March 17, 2017. Claimant submitted its proof of attorneys' fees in the amount of $103,109.57 by March 15, 2017, but Respondent has submitted no opposition. The Arbitrator finds that the submitted attorneys' fees are reasonable.

## Award

For the reasons stated above, I, the Undersigned Arbitrator, award as follows:

1. Partial Final Award dated February 23, 2017, which awarded Claimant damages including interest in the amount of $755,125.00, is hereby incorporated by reference. Respondent ROI Land Investments, Ltd. shall pay to Claimant Seth Shaw this awarded amount within (30) days from the date of transmittal of this Final Award to the parties unless already paid.

2. Within thirty (30) days from the date of transmittal of this Final Award to the parties, Defendant ROI Land Investments, Ltd. shall pay to Seth Shaw the sum of US$103,109.57 representing the awarded attorneys' fees.

3. The administrative fees and expenses of the International Centre for

Dispute Resolution, a division of the American Arbitration Association, totaling US$18,750.00 and the compensation and expenses of the arbitrator totaling US$17,580.00 shall be borne equally by the parties. Therefore, ROI Land Investments, Ltd. shall reimburse Seth Shaw the sum of US$3,625.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Seth Shaw.

4. This award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims and counterclaims of this award, not expressly granted herein, are hereby denied.

I hereby certify that, for the purposes of Article I of the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, USA.

Date: March 30, 2017

_____
William H. Baker, Arbitrator

3

State of NEW YORK )
         ) SS:
County of Westchester )

I, William H. Baker, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

_____3/30/17_____    _____
Date             William H. Baker, Arbitrator

State of NEW YORK )
         ) SS:
County of Westchester )

On this 30th day of March, 2017, before me personally came and appeared William Baker, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_____
Notary Public

MARK F. SHKRELI
Notary Public, State of New York
No. 03-4996849
Qualified in Bronx County
Cert. Filed in Westchester County
Commission Expires 07/26/18

4

# CONSULTING AGREEMENT

THIS AGREEMENT is among *ROI Land Investments, Ltd.* a corporation organized under laws of the State of Nevada, whose address is 825 Lebourgneuf Blvd, Suite 315, Quebec, QC, Canada G2J 0B9 (hereinafter referred to as the "Company"); and **Seth Shaw**, with 4 Whitehal Rd, Poughkeepsie, New York (hereinafter referred to as the "Consultant").

WHEREAS, the Consultant is in the business of assisting public companies with strategic business planning for purposes of Corporate Financing, Structuring, and investor and public relations services designed to make the investing public, located overseas, knowledgeable about the benefits of stock ownership in the Company; and

WHEREAS, the Company recognizes that the Consultant is not in the business of stock brokerage, investment advice, activities which require registration under either the Securities Act of 1933 (hereinafter "the Act") or the Securities and Exchange Act of 1934 (hereinafter "the Exchange Act"), underwriting, banking, is not an insurance Company, nor does it offer services to the Company which may require regulation under federal or state securities laws; and

WHEREAS, the parties agree, after having a complete understanding of the services desired and the services to be provided, that the Company desires to retain Consultant to provide such assistance through its services for the Company, and the Consultant is willing to provide such services to the Company;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. DUTIES AND INVOLVEMENT.

The Company hereby engages Consultant to provide the following services:

- Assist the Company with the introduction of value added investor, potential strategic and business development partners and acquisition targets.
- Assist The Company in developing Corporate Structures, Management Strategies, business development.
- Other services as mutually agreed to by The Company and Consultant

2. RELATIONSHIP AMONG THE PARTIES.

Consultant acknowledges that it is not an officer, director or agent of the Company, it is not, and will not, be responsible for any management decisions on behalf of the Company, and may not commit the Company to any action. The Company represents that the consultant does not have, through stockownership or otherwise, the power

1

EXHIBIT B

neither to control the Company, nor to exercise any dominating influences over its management.

Consultant understands and acknowledges that this Agreement shall not create or imply any agency relationship among the parties, and Consultant will not commit the Company in any manner except when a commitment has been specifically authorized in writing by the Company. The Company and the Consultant agree that the relationship among the parties shall be that of <u>independent contractor</u>.

### 3. EFFECTIVE DATE, TERM AND TERMINATION.

This Agreement shall be effective on May 1st, 2014 and will continue until May 1st, 2015. This 12 Month Agreement can only be modified if mutually agreeable and in writing by both parties.

### 4. OPTION TO RENEW AND EXTEND.

Company may renew this Agreement on the same terms by providing written notice to Consultant at any time prior to the expiration hereof.

### 5. COMPENSATION AND PAYMENT OF EXPENSES

Company agrees to pay for all costs and expenses incurred associated with its employees' working with the Consultant and its representatives, including lodging, meals, and travel as necessary. All other expenses for the fulfillment of this Agreement shall be borne by the Consultant, and by third parties engaged by it in connection with the performance of the financial and public relations services provided for herein.

In respect to capital raising in favor of the Company, that is directly attributed to the efforts of the Consultant the Company agrees to compensate the Consultant as follows:

The Consultant shall receive no monthly retainer unless mutually agreed and signed in writing by both parties. The Consultant shall receive 500,000 Shares upon signing of this agreement, such shares shall be considered fully earned upon issuance.

### 6. SERVICES NOT EXCLUSIVE.

The Company acknowledges that Consultant is engaged in other business activities, and that it will continue such activities during the term of this Agreement. Consultant shall not be restricted from engaging in other business activities during the term of this Agreement.

2

7. CONFIDENTIALITY.

Consultant acknowledges that it may have access to confidential information regarding the Company and its business. Consultant agrees that it will not, during or subsequent to the term of this Agreement, divulge, furnish or make accessible to any person (other than with the written permission of the Company) any knowledge or information or plans of the Company with respect to the Company or its business, including, but not by way of limitation, the products of the Company, whether in the concept or development stage, or being marketed by the Company on the effective date of this Agreement or during the term hereof.

8. COVENANT NOT TO COMPETE.

During the term of this Agreement, Consultant warrants, represents and agrees that it will not directly participate in the information developed for and by the Company, and will not compete directly with the Company in the Company's primary industry or related fields.

9. INDEMNIFICATION.

Company agrees to indemnify and hold harmless the Consultant and its respective agents and employees, against any losses, claims, damages or liabilities, joint or several, to which either party, or any such other person, may become subject, insofar as such losses, claims, damages or liabilities (or actions, suits or proceedings in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in the registration statement, any preliminary prospectus, the prospectus, or any amendment or supplement thereto; or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated therein, or necessary to make the statements therein not misleading; and will reimburse the Consultant, or any such other person, for any legal or other expenses reasonably incurred by the Consultant, or any such other person, in connection with investigation or defending any such loss, claim, damage, liability, or action, suit or proceeding.

10. MISCELLANEOUS PROVISIONS

Section a  Time. Time is of the essence of this Agreement.

Section b  Presumption. This Agreement or any section thereof shall not be construed against any party due to the fact that said Agreement or any section thereof was drafted by said party.

Section c  Computation of Time. In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period shall begin to run on the next day which is not a Saturday,

3

Sunday or a legal holiday, in which event the periods hall run until the end of the next day thereafter which is not a Saturday, Sunday or legal holiday.

Section d   Titles and Captions. All article, section and paragraph titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the context nor affect the interpretation of this Agreement.

Section e   Pronouns and Plurals. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the Person or Persons may require.

Section f   Further Action. The parties hereto shall execute and deliver all documents, provide all information and take or forbear from all such action as may be necessary or appropriate to achieve the purposes of this Agreement.

Section g   Good Faith, Cooperation and Due Diligence. The parties here to covenant, warrant and represent to each other good faith, complete cooperation, due diligence and honesty in fact in the performance of all obligations of the parties pursuant to this Agreement. All promises and covenants are mutual and dependent

Section h   Savings Clause. If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

Section i   Assignment. This Agreement may not be assigned by either party hereto without the written consent of the other, but shall be binding upon the successors of the parties.

Section j   Arbitration.

   i. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through direct discussion, the parties agree to first endeavor to settle the dispute in an amicable manner by mediation under the Commercial Mediation Rules of the American Arbitration Association before resorting to arbitration. Thereafter, any unresolved controversy or claim arising out of or relating to this Agreement or a breach thereof shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof.

   ii. Any provisional remedy, which would be available from a court of law, shall be available to the parties to this Agreement from the Arbitrator pending arbitration.

   iii. In the event that a dispute results in arbitration, the parties agree that the prevailing party shall be entitled to reasonable attorney's fees to be fixed by the arbitrator.

Section k   Notices. All notices required or permitted to be given under this Agreement shall be given in writing and shall be delivered, either personally or by express delivery service, to the party to be notified. Notice to each party shall be deemed to have been duly given upon delivery, personally or by courier(such as Federal Express or similar express delivery service), addressed to the attention of the officer at the address set forth heretofore, or to such other officer or addresses as either party may designate, upon at least ten (10) days' written notice, to the other party.

Section l   Governing law. The Agreement shall be construed by and enforced in accordance with the laws of the State of *Nevada*.

Section m   Entire agreement. This Agreement contains the entire understanding and agreement among the parties. There are no other agreements, conditions or representations, oral or written, express or implied, with regard thereto. This Agreement may be amended only in writing signed by all parties.

Section n   Waiver. A delay or failure by any party to exercise a right under this Agreement, or a partial or single exercise of that right, shall not constitute a waiver of that or any other right.

Section o   Counterparts. This Agreement may be executed in duplicate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. In the event that the document is signed by one party and faxed to another the parties agree that a faxed signature shall be binding upon the parties to this agreement as though the signature was an original.

Section p   Successors. The provisions of this Agreement shall be binding upon all parties, their successors and assigns.

Section q   Counsel. The parties expressly acknowledge that each has been advised to seek separate counsel for advice in this matter and has been given a reasonable opportunity to do so.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement to be effective as of the day and year provided herein.

Signature Page Follows

COMPANY:  
*ROI Land Investments, Ltd.*

CONSULTANT:  
*Consultant*

/S/: _____  
By: Sebastian Cliche  
Its: Director,

Date: May 1st, 2014

/S/: _____  
By: Seth Shaw  
Its: N/A

Date: May 1st, 2014

*ROI Land Investments, Ltd.*

S: _____  
David Price, Secretary

6