Patrick E. Ogle. Esq. (NBN 13208)
Law Office of Patrick E. Ogle
3502 South Virginia Street, Suite A8,
Reno, NV  89502
P: 775-823-9126
patrick@nvcorplaw.com

*Attorney for Respondent ROI Land Investments Ltd.*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SETH SHAW, | Case No. 2:17-cv-01165-JAD-VCF |
| Petitioner, | |
| vs. | **MOTION TO DISMISS AND** |
| ROI LAND INVESTMENTS LTD., | **VACATE ARBITRATION AWARD** |
| Respondent | |

## MOTION TO DISMISS AND VACATE ARBITRATION AWARD

Comes now Respondent ROI Land Investments Inc. ("Respondent") in its motion to dismiss the Petition for Confirmation of Arbitration Award and Entry of Judgment filed on April 26, 2017 (the "Petition") by Petitioner Seth Shaw ("Petitioner"), and to vacate the arbitration awards issued by the International Centre for Dispute Resolution, International Arbitration Tribunal (the "Arbitrator").  This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) and 9 U.S.C. § 10(a).  In support of this motion, Respondent asserts the following points and authorities.

## INTRODUCTION

The Final Award by the Arbitrator is unenforceable as a matter of law.  Therefore, it must be vacated, and the Petition must be dismissed pursuant to 9 U.S.C. § 10(a)(3) and (4).  Although the Arbitrator's awards provide a deceptively coherent opinion, they are, in fact, based upon a hodgepodge of unpublished cases from various non-precedential jurisdictions that invoke new

and novel interpretations of law that are without binding precedent. Moreover, those interpretations are undermined by the Arbitrator's own admission that "I do not have any prior experience in securities law" and rise to the level of a manifest disregard for the law.

It is clear the Arbitrator made what he believed to be an equitable determination that each party to the agreement was sophisticated and knew what it was doing, despite being legally precluded from performing as agreed, and decided to award monetary damages to Petitioner because Respondent refused to perform. However, Respondent contends it was conned into believing that Petitioner was not obligated to be registered as a broker and relied upon Respondent's advice in making the contract recitals. That advice was not and is not true, and Petitioner's career conduct and the illegality of the contract were only discovered by Respondent after the contract's effective date.

It was ironically fortuitous from a legality standpoint that Petitioner failed to procure any securities investments in Respondent that would have required rescission and may have resulted in third-party shareholder suits against Petitioner and Respondent.

Respondent is a foreign corporation with foreign-national management. Petitioner held himself out to Respondent to be a U.S. securities expert and expressly testified as such at the Arbitration. Accordingly, Respondent relied upon Petitioner's representations concerning his regulatory status. In reality, Petitioner is a career-long unregistered securities broker and is routinely engaged in proscribed securities activities.

Illegality cannot be cleansed by contract, and parties to an illegal contract cannot be compelled to perform it. Furthermore, a court cannot award damages to a non-innocent party to an illegal contract, despite an arbitration award -- especially when **the purported award is to the party who created the illegality** *and* **did not successfully perform the services required by the contract**. This is the very essence of the unclean hands doctrine.

For these reasons and those set forth below, the Arbitrator's Partial Final Award and Final Award are completely irrational and exhibit a manifest disregard of applicable law. Therefore, the Arbitrator's award of in excess of $800,000.00 as a proxy for delivery and public sales of the

stock he claims he earned the moment the contract was signed is illegal, irrational, and must be vacated. Accordingly, the Petition must be dismissed.

## BACKGROUND

This case arises out of a claim by Petitioner against Respondent for Respondent's alleged failure to deliver him 500,000 shares of Respondent's restricted stock pursuant to a Consulting Agreement, which the parties entered into as of May 1, 2014 (the "Contract").[1] See Exhibit 1, *Contract*. The Contract required arbitration in accordance with its terms. A one-day hearing was held before a single Arbitrator, without a stenographer, on January 20, 2017. On February 23, 2017, the Arbitrator issued a Partial Final Award in which he ruled that Petitioner was entitled to recover $755,125.00 in damages and interest from Respondent on his breach of contract claim. See Exhibit 2, *Partial Final Award*. The Contract provided for the award of reasonable attorneys fees to the prevailing party, and the Arbitrator awarded attorney's fees of $103,109.57 as part of the Final Award on March 30, 2017. See Exhibit 3, *Final Award*.

## ARGUMENT

### 1. Legal Standard

The Federal Arbitration Act (FAA) permits any party to apply to the court to confirm, vacate, modify, or correct an arbitration award. 9 U.S.C. § 9. A court must confirm an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9; Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 997 (9th Cir. 2003). "Under the statute, confirmation is required even in the face of erroneous findings of fact or misinterpretations of law." Kyocera, 341 F.3d at 997 (internal quotation marks omitted). The statutory grounds for vacatur under 9 U.S.C. § 10(a) are:

(1) where the award was procured by corruption, fraud, or undue means;

---

[1] Restricted stock is stock that the issuer has not registered with the United States Securities and Exchange Commission under the Securities Act of 1933, 15 U.S.C. § 77a, et seq. (the "1933 Act"). Section 5 of the 1933 Act, 15 U.S.C. § 77e, provides a general bar on sales of unregistered securities, while Section 4 of the 1933 Act, 15 U.S.C. § 77d, states certain exceptions to Section 5's registration requirement. Restricted stock cannot be freely traded in public securities markets.

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

See U.S. Life Ins. Co. v. Superior Nat. Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010).

Section 10(a)(4) allows a court to vacate an arbitration decision if the "arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "'[A]rbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law.'" Schoenduve Corp. v. Lucent Technologies, 442 F.3d 727, 731 (9th Cir. 2006) (quoting Kyocera Corp. v. Prudential-Bache T. Servs., 341 F.3d 987, 997 (9th Cir.2003) (en banc)); see, e.g., Westerbecke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 217 (2d Cir. 2002) (holding that an arbitrator manifestly disregards the law when "the arbitrator kn[ows] of the relevant principle, appreciate[s] that this principle controlled the outcome of the disputed issue, and nonetheless willfully flout[s] the governing law by refusing to apply it").

In the Ninth Circuit, "an arbitrator's manifest disregard of the law remains a valid ground for vacatur of an arbitration award under § 10(a)(4) of the Federal Arbitration Act." Comedy Club, Inc. v. Improv West Associates, 553 F.3d 1277, 1281 (9th Cir. 2009) (holding that the U.S. Supreme Court's holding in Hall St. Assocs., L.L.C. v. Mattel, Inc., 550 U.S. 968, 127 S.Ct. 2875, 167 L.Ed.2d 1151, did not undermine the Ninth Circuit's prior precedent, Kyocera Corp., 341 F.3d 987).

### 2. Manifest Disregard for Applicable Law

The Arbitrator exhibited a manifest disregard for Section 15(a)(1) and Section 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act") by incorrectly interpreting and

misapplying applicable law and enforcing an illegal contract.[2] Specifically, the Arbitrator misapplied the evidence to new law that he conjured in his three-part reasoning for the awards, finding: (i) Respondent did not prove Petitioner was an unregistered broker; (ii) Respondent's defense that Petitioner was an unregistered broker was time barred; and (iii) Respondent's defense that Petitioner was an unregistered broker was unavailable to Respondent as a willing party to the Contract.

Conversely, Respondent contends: (i) the evidence introduced at the Arbitration proved (x) Petitioner engaged in unregistered broker activities with third parties, (y) the Contract illegally required Petitioner to engage in unregistered broker activities, and (z) Petitioner clearly and concisely solicited Respondent to retain him for additional unregistered broker activities in a writing admitted as evidence at the Arbitration; (ii) there is no statute of limitations on a defendant's ability to invoke Section 29(b) as a defense to enforcement of an illegal contract; (iii) Respondent was an unwilling innocent party to the Contract that is entitled to void the Contract for the benefit of itself and others; and (iv) the damages calculation by Petitioner, as wholly accepted by the Arbitrator, is irrational under the circumstances.

Section 15(a)(1) of the Exchange Act requires that any person transacting business as a broker or dealer must register with the SEC. 15 U.S.C. § 78o(a)(1) (2006). Exchange Act Section 29(b) provides that "every contract made in violation of [the Exchange Act] . . . and every contract . . . the performance of which involves the violation of . . . [the Exchange Act] . . . **shall be void**: (1) as regards the rights of any persons who, in violation of any such provision, rule or regulation, shall have made or engaged in the performance of any such contract . . . ." Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co., 678 F.2d 552, 560 (5th Cir. 1982); see also GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 201 (3d Cir. 2001).

### a. Respondent was and is an unregistered securities broker.

---

[2] The ability to contract has always been subject to limitation. Perhaps the most important of these limitations is the public policy exception, which prohibits courts from enforcing contracts or awards where the contract or award violates the positive law or is more generally against the interest of the public at large. See Seymour v. Blue Cross/Blue Shield, 988 F.2d 1020, 1023 (10th Cir. 1993) (stating the exception derives from the public's interest in having its views represented in the adjudication of private contracts).

It is unlawful for an unregistered broker to engage in the business of "effecting transactions in securities for the account of others."[3]  Courts look to the Securities and Exchange Commission (the "SEC") for persuasive authority as to what that phrase actually means.[4]  This authority has been summarized to include the following factors, although no single factor is dispositive:  (1) involvement in negotiations; (2) engaging in solicitations; (3) discussing details about securities or making recommendations; (4) compensation on a transaction-related basis; and (5) previous involvement in the sale of securities (the "ABA" factors).[5]

Courts consistently examine similar factors.  For example, in SEC v Kramer, the court inquired whether a person (1) works as an employee, (2) receives a commission, (3) sells the securities of another issuer, (4) participates in negotiations, (5) provides advice or a valuation as to the merit of an investment, or (6) actively (rather than passively) finds investors (the "K" factors).[6]

In SEC v. Offill, the court considered whether the "activities include[d]: [1] analyzing the financial needs of an issuer, [2] recommending or designing financial methods, [3] involvement in negotiations, [4] discussion of details of securities transactions, [5] making investment recommendations, and [6] prior involvement in the sale of securities" (the "O" factors).  No. 3:07-cv-1643-D, p.7 (N.D. Tex. Jan. 26, 2012).

In SEC v. Helms, the court found that activities exceeded simple introductions because (1) the "[investor] and [broker] exchanged multiple email communications concerning the [] investment" and (2) "[the broker] conveyed [the investor's] questions about the investment to Sellers" (the "H" factors).  No. A-13-CV-01036, p.6 (W.D. Tex. Oct. 20, 2015).

---

[3]  See 15 U.S.C. § 78(o); 15 U.S.C. § 78c(a)(4).

[4]  See, e.g., SEC v. Kern, 425 F.3d 143, 151 n.5 (2d Cir. 2005); New York City Employees' Ret. Sys. v. SEC, 45 F.3d 7, 13 (2d Cir. 1995); Amalgamated Clothing & Textile Workers Union v. Wal-Mart, 821 F. Supp. 877, 884 (S.D.N.Y. 1993).

[5]  See American Bar Association, *Report and Recommendations of the Task Force on Private Placement Broker-Dealers*, at p.16 (June 20, 2005).

[6]  778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011) (citing SEC v. Hansen, No. 83 Civ. 3692, at p.10 (S.D.N.Y. Apr. 6, 1984)).

In addition to the SEC and court analyses, FINRA Rule 1032(i) governs Petitioner's exact conduct and requires Series 79 registration for 'investment banking representatives' whose activities involve "(1) advising on or facilitating debt or equity securities offerings through a private placement" *or* "(2) advising on or facilitating mergers and acquisitions" or "business combination transactions" (the "<u>S79</u>" factors).[7]  All, or only one, of these several factors may be sufficient for a finding of unlicensed broker activities that render a contract void.[8]

### *(1)  The Contract Expressly Required Unlicensed Broker Activities.*

The Contract explicitly stated several illegal purposes for Petitioner's retention. Specifically, the Contract stated:

- The engagement is for "**<u>capital raising</u>**."  <u>Exhibit 1</u>, *Contract*, p.2.
    - ABA#2 (engaging in solicitations), ABA#3 (discussing details about securities), K#6 (actively finding investors), and O#4 (discussing details of securities transactions).
- "**<u>[I]n respect to capital raising . . . the Company agrees to compensate the Consultant</u>**."  <u>Exhibit 1</u>, *Contract*, p.2.
    - ABA#4 (compensation on a transaction-related basis) and K#2 (receives a commission).
- Petitioner agreed to "[a]ssist [] with the **<u>introduction of value added investor</u>**."  <u>Exhibit 1</u>, *Contract*, p.1.
    - ABA#2 (engaging in solicitations), K#6 (actively finding investors), and S79#1 (facilitating securities offerings, including origination).
- Petitioner agreed to "[a]ssist [] with . . . **<u>potential strategic and business development partners</u>** and **<u>acquisition targets</u>**."  <u>Exhibit 1</u>, *Contract*, p.1.
    - S79#2 (advising on or facilitating mergers and acquisitions or business

---

[7] *See also* FINRA Notice 09-41 (emphasis added).

[8] Section 29(b) of the Securities Exchange Act of 1934 provides that contracts made in violation of any provision of the Act or rule promulgated thereunder are "void"--not simply voidable. *See* 15 U.S. Code § 78cc(b).

      combination transactions).

- Petitioner agreed to "[a]ssist [] in developing **Corporate Structures**, Management Strategies, [and] business development." Exhibit 1, *Contract*, p.1.
    - S79#2 (advising on or facilitating financial restructurings and corporate reorganizations).

These facts clearly demonstrate that (i) Petitioner was hired by Respondent to be the company's investment banker, (ii) he was obligated to solicit investors to purchase Respondent's securities, and (iii) he was to be compensated solely in exchange for capital raising. Notably, the "O" and "H" factors do not even require transaction-related compensation for a finding of unlicensed broker activities. Therefore, the Contract itself requires unlicensed broker activities and is **void**.

### *(2)   Petitioner Engaged in Unlicensed Broker Activities for Respondent.*

In addition to the express services under the Contract, Petitioner agreed to provide "**[o]ther services as mutually agreed**." Exhibit 1, *Contract*, p.1. These services were admitted in Petitioner's testimony that he **sent e-mails and called over fifteen (15) prospective investors** to solicit investments in Respondent. Petitioner also testified and authenticated multiple e-mails that memorialized his efforts to arrange meetings and explain the general nature of the securities offering to prospective investors. These facts demonstrate, at least, ABA#2 (engaging in solicitations), ABA#3 (discussing details about securities or making recommendations), K#6 (actively finding investors), O#4 (discussing details of securities transactions), H#1 (exchanging multiple e-mail communications concerning the investment), and H#2 (conveying the investor's questions to Respondent).

### *(3)   Petitioner Has a Made a Career as an Unlicensed Broker.*

Petitioner's testimony reflected his long history as an unlicensed broker.[9] However, it

---

[9] For example, in February 26, 2014, Petitioner entered into an employment agreement in which he was entitled to "**a one-time $25,000 cash bonus once the Company completes a minimum private placement financing of $750,000**." See Tauriga Sciences, Inc., 10-K (Mar. 31, 2016); see also NRS 47.130(2)(b) (permitting judicial notice of reliable public information).

also reflected his recent offer to perform **new** unlicensed broker activities for Respondent. Specifically, Petitioner stated:

- "I will retain 60% of all net proceeds [from Respondent's stock sales] and 40% will be sent back to the Company."[10] Exhibit 2, *Partial Final Award*, p.11.
    - ABA#4 and K#2 (compensation on a transaction-related basis).
- "I am prepared to assist the Company with any ongoing raises." Exhibit 2, *Partial Final Award*, p.11.
    - ABA#1, K#4 and O#3 (participating in negotiations), ABA#2 (engaging in solicitations), ABA#3 (discussing details about securities or making recommendations), and K#6 (actively finding investors).
- "[Respondent will] provide me with compensation based upon successful [c]apital raised and success in broadening the shareholder base." Exhibit 2, *Partial Final Award*, p.11.
    - ABA#4 and K#2 (compensation on a transaction-related basis).
- Petitioner will travel to Istanbul to meet with an investor for a private investment who "also [is] not opposed to potentially taking a position in the open market at this time." Exhibit 2, *Partial Final Award*, pp.11-12.
    - ABA#1, K#4 and O#3 (participating in negotiations), ABA#2 (engaging in solicitations), ABA#3 (discussing details about securities or making recommendations), and K#6 (actively finding investors).

Petitioner acted as an unlicensed broker for multiple issuers for more than a decade as a matter of public record, and the foregoing facts clearly demonstrate ABA#5 (previous involvement in the sale of securities), K#3 (selling the securities of another issuer), and O#6 (prior involvement in the sale of securities). Therefore, his prior activities and the newly proposed agreements require broker registration.

---

[10] This was an unlawful proposal to engage in an unregistered offering of securities to the public for the benefit of Respondent, which also would make Petitioner a statutory underwriter who must register as a broker. 15 U.S.C. § 77b(a)(11).

### b. There is no time bar to a Section 29(b) defense.

Petitioner asserted, and the Arbitrator agreed and reasoned in the Partial Final Award, that Respondent's defense under Section 29(b) was time barred because the defense was brought more than one year after the effective date of the Contract. Exhibit 2, *Final Partial Award*, pp. 12-15. This notion is incorrect as a matter of law and also defies logic. "In contrast to the general language of Section 29(b), which renders "every contract" made in violation of the Act void, the [statute of] limitations section applies only to suits for violations of Section 15(c)(1) of the Act, 15 U.S. C. § 78o(c) (1)." Livingston v. Weis, Voisin, Cannon, Inc., 294 F. Supp. 676, 679 (D.N.J. 1968). Hence, the Contract between the issuer (i.e., Respondent) and the unregistered broker-dealer (i.e., Petitioner) clearly is voidable by the issuer, because the unregistered broker-dealer could not carry out his obligations under the contract without violating the Exchange Act. See The Facebook Inc. v. Pac. Nw. Software Inc., 640 F.3d 1034, 1039 (9th Cir. 2011) (quoting 15 U.S.C. § 78cc(b)); Mills v. Elec. Auto–Lite Co., 396 U.S. 375, 387–88, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

The obvious implication of Petitioner's and the Arbitrator's interpretation is that a plaintiff could bring a case to enforce an illegal contract 365 days after its effective date and deprive the counterparty of the ability to defend its failure to participate in an illegal contract because the defense expired. This reasoning is illogical and unsupported by case law. Moreover, there is nothing whatsoever in Section 29 that suggests the existence of a statute of limitations applicable to a voidability defense. The only theoretical legal basis for Petitioner's assertion is dicta in an unpublished case, by shareholders against an issuer, in which the shareholders were denied in their motion for summary judgment because there were outstanding issues of material fact. See Alpha Capital v. Oxysure Systems, 2016 WL 6766948 at *4 (S.D.N.Y. 2016). The holding in Alpha in no way turned on the issue of the purported statute of limitations on a Section 29(a) defense. Statutes of limitations only apply to claims, not defenses.

To be blunt, the purported principle in the unpublished Alpha Capital case is a fiction. The result would be that a party to an illegal contract that rightfully decides not to give effect to

it would have to file suit for declaratory relief against its counterparty to prove it is illegal instead of requiring the counterparty to sue for enforcement or damages, as in every other breach of contract situation. It is even more unconscionable that the outcome of the declaratory action would be an intentional omission against the plaintiff's interest that it engaged in an illegal act -- an endeavor that would violate the Fifth Amendment right against self-incrimination. None of this makes any sense as a matter of law or public policy, and such an interpretation would be tantamount to extortion by bad-actor parties to illegal contracts with unwitting counterparties.

Moreover, Section 29(a) exists for the protection of investors, and an issuer of securities is precluded from selling securities through unregistered securities intermediaries (i.e., unlicensed brokers). One of the penalties for involving unregistered brokers in a securities transaction is that the investors have a right of rescission of their investment. It would be anathema to mandate the performance of illegal contracts between an unregistered broker and issuer when the natural and legal consequence is to create a follow-on private right of action by the resulting investor and issuer. The statute is specifically designed to prevent such a perversion of justice.

### c.  **Respondent is an unwilling innocent party.**

At the last minute, without an opportunity for Respondent to brief the issue, Petitioner introduced the notion that Respondent was a willing party and could not invoke Section 29(b) as a defense. This theory was embraced by the Arbitrator in the Partial Final Award, stating that "[t]he case of Buffalo Forge v. Ogden, 555 F. Supp. [892, 906 (W.D.N.Y. 1983)] . . . permitted the plaintiff to preclude defendant from asserting the illegality of a contract on the grounds that it was not an 'unwilling innocent party.'" Exhibit 2, *Partial Final Award*, pp. 14-15. That case operates on one very large assumption: that Respondent was an unwilling innocent party. That case also oversimplifies the U.S. Supreme Court case it cites in making that conclusion.

Instead, the U.S. Supreme Court in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 387, 90 S.Ct. 616, 623, 24 L.Ed.2d 593 (1970), simply stated that the language of Section 29(b) "does not ***compel*** the conclusion that the contract is a nullity." (emphasis added) The Court further

stated that "[t]he interests of the victim [i.e., Respondent] are sufficiently protected by giving him the right to rescind; **to regard the contract as void where he has not invoked that right would only create the possibility of hardships to him or others** without necessarily advancing the statutory policy of disclosure." Mills, 396 U.S. at 388 (emphasis added).

In this case, an unregistered U.S. broker is attempting to take advantage of an unwitting foreign issuer by illegally matchmaking a prospective shareholder with the issuer, which in turn would create a private right of action by the shareholder against both the unregistered broker and the issuer and create a right of rescission under Section 29(b) by the shareholder against the issuer. This is exactly why the Section 29(b) defense exists to make these contracts voidable. To preclude it would create further violations of the law and harm prospective shareholders.

### d. The Arbitrator's award reflects an irrational market theory.

Section 10(a)(4) allows a court to vacate an arbitration decision if the "arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "'[A]rbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law.'" Schoenduve Corp., 442 F.3d at 731 (quoting Kyocera Corp., 341 F.3d at 997). Petitioner did not brief any reasoned theory of damages. Instead, Petitioner made an arbitrary claim for $900,000 based upon what Petitioner thought 500,000 shares of Respondent's stock might have been worth *if* he had traded it with expert skill and discipline over an extended period of time. That is a very large assumption, considering this case does not involve a blue-chip stock with thousands of shareholders and active trading.

Instead, Respondent's stock was and is thinly traded, in an over-the-counter market, with very few willing buyers and sellers, in a trading environment where the selling pressure from Petitioner's theoretical sales of 500,000 shares of stock over the subject timeframe would have decimated the public share price. Even if Petitioner possessed the skills of a restrained and disciplined trader (despite Petitioner's contention in his post-hearing rebuttal brief that he could have dumped all of the shares on one day if he wanted), there were no recurring conditions that could yield $900,000 from the sale of the 500,000 shares. It also is ironic that the skill set

Petitioner relies upon to justify his damages is identical to that of a registered broker. Therefore, any credibility of Petitioner on the issue of damages also should be considered in the context of his unregistered broker activities.

### 3. Arbitrator Misconduct

Under 9 U.S.C. § 10(a)(3), an award can be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." In this case, Respondent was deprived of any meaningful opportunity to refute the key legal theories upon which the Arbitrator relied in the Partial Final Award and Final Award.

This case was briefed as follows: (i) pre-hearing briefs; (ii) oppositions to pre-hearing briefs; (iii) replies to pre-hearing briefs; (iv) post-hearing briefs (7-page limit, 14-point font, and double spaced); and (v) post-hearing rebuttal briefs due five days after the post-hearing briefs (3-page limit; 14-point font, and double spaced). Critically, Petitioner first introduced two of the Arbitrator's three grounds for the Arbitrator's decision *after* the Arbitration in Petitioner's post-hearing brief: (i) that the Section 29(b) defense was time barred; and (ii) that Petitioner was not an unwilling innocent party. Thereafter, Respondent had a mere five days and three pages of 14-point font, double-spaced text, inclusive of headers and footers, to address the expected rebuttal topics and also to rebut **two brand new and dispositive substantive arguments**.

It is clear that the Arbitrator deprived Respondent of the ability to brief these issues. Moreover, the Arbitrator's express reliance on those issues, or even to any extent, violates all traditional notions of fairness and due process. Therefore, the Partial Final Award and Final Award exhibited a manifest disregard for applicable law, are unenforceable by this Court, and must be vacated.[11] Accordingly, the Petition must be dismissed.

\\

\\

---

[11] The Partial Final Award clearly predicated the Final Award and, together, they constitute a single, fully integrated award with an issue date of March 30, 2017.

## **CONCLUSION**

Petitioner's testimony and the entire body of evidence supports Respondent's defenses that Petitioner (i) is an unregistered broker, (ii) has been an unregistered broker for more than a decade, (iii) entered into a contract to provide unregistered broker services to Respondent, and (iv) offered to enter into multiple subsequent unregistered broker agreements with Respondent. Petitioner is the definitional personification of an unregistered broker and is required to hold a Series 79 designation with FINRA. Accordingly, the Arbitrator's determination that Petitioner was simply a finder and not engaged in proscribed broker activities is completely irrational and exhibits a manifest disregard of law. In addition, the Arbitrator's last-minute consideration of non-existent law relating to a fictitious time bar to a defense, as well as the notion that an innocent counterparty is a willing participant to an illegal contract when the petitioner is the party that both created the illegality and concealed the facts necessary to reveal the illegality, are completely irrational and exhibit a manifest disregard of law.

WHEREFORE, Respondent prays that (i) the Partial Final Award and Final Award be vacated in their entirety, and (ii) the Petition be dismissed with prejudice.

Dated: June 30, 2017                                Respectfully submitted,

By:  /s/ Patrick E. Ogle
Patrick E. Ogle. Esq. (NBN 13208)
Law Office of Patrick E. Ogle
3502 South Virginia St., Suite A8,
Reno, NV  89502
P:  775-823-9126
patrick@nvcorplaw.com

*Attorney for Respondent ROI Land Investments Ltd.*

**CERTIFICATE OF SERVICE**

Pursuant to FED. R. CIV. P. 5(b), I hereby certify that, on the date where undersigned, I caused the foregoing document to be served on all parties to this action by:

  __X__   placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail;

  ____   personal delivery;

  ____   facsimile (fax);

  ____   Federal Express, UPS, or other overnight delivery;

  __X__   E-File;

fully addressed to each recipient as follows:

> Seth Shaw
> 1290 Weston Road, Suite 218
> Weston, Florida 33326

DATED: June 30, 2017.

MOTION TO DISMISS AND VACATE ARBITRATION AWARD