|   |   |
|---|---|
| Seth Shaw, | 2:17-cv-01165-JAD-VCF |
|     Petitioner | **Order Confirming Arbitration Award** |
| v. | [ECF Nos. 1, 7] |
| ROI Land Investments Ltd., | |
|     Respondent | |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

    Respondent ROI Land Investments Ltd. hired petitioner Seth Shaw as a consultant to help it raise capital for its business.[1] Upon signing of the consulting agreement, Shaw was to receive 500,000 shares in ROI's restricted stock.[2] Shaw never received those shares.[3] The consulting agreement required the parties to arbitrate their disputes,[4] so arbitrate they did.[5] Shaw was awarded $755,125 in damages and interest and $103,109.57 in attorney's fees,[6] but ROI has not paid Shaw any of his award.[7] Shaw now petitions to confirm the arbitration award,[8] and ROI countermoves to vacate the award and dismiss the petition.[9] Because ROI fails to overcome the highly deferential standard afforded to arbitration awards, I grant Shaw's motion to confirm and

---

[1] ECF No. 7-1.

[2] *Id.* at 2.

[3] ECF No. 7-2 at 2.

[4] ECF No. 7-1 at 5.

[5] ECF Nos. 7-2, 7-3.

[6] ECF No. 7-3.

[7] ECF No. 1 at 2.

[8] ECF No. 1.

[9] ECF No. 7.

deny ROI's countermotion to vacate.

## Background[10]

When Shaw didn't receive 500,000 shares in ROI's restricted stock as contracted for in a consulting agreement, he took ROI to arbitration. ROI asserted three bases for its failure to transfer the shares: (1) it was fraudulently induced to enter into the consulting agreement; (2) Shaw didn't perform under the agreement, so ROI's performance was excused; and (3) the agreement was illegal—and thus void—because Shaw was acting as an unregistered broker. Shaw testified on his own behalf and introduced some documents, and ROI called no witnesses of its own but cross-examined Shaw and introduced other documents. The arbitrator found that ROI had not satisfied its burden on proof on the fraudulent-inducement counterclaim and excuse-of-performance defense, so he granted Shaw's motion for summary judgment on both.

The briefing that the arbitrator relied on (in addition to oral arguments made at the hearing) in deciding the sole remaining issue was extensive. The briefing included pre-hearing briefs with oppositions and replies and post-hearing briefs with rebuttals.[11] Neither party asked the arbitrator for a time- or page-limit extension for any of the briefs. The arbitrator issued his decision, awarding damages and attorney's fees to Shaw, and finding that ROI's illegal-and-void argument failed for three reasons: (1) ROI failed to prove that Shaw was acting as an unregistered broker; and even if it could satisfy its burden of proof (2) the defense was barred by a one-year limitation period; and (3) ROI was not an unwilling, innocent participant in the agreement—its hands were unclean.

ROI has not yet satisfied the award that Shaw now petitions to confirm.[12] In lieu of a response, ROI moves to vacate the award and dismiss the petition.[13] Shaw opposes ROI's

---

[10] These background facts are taken from the arbitrator's partial-final-award decision, so I cite to it generally for this section. *See* ECF No. 7-2.

[11] ECF No. 7 at 13.

[12] ECF No. 1.

[13] ECF No. 7.

2

1  motion,[14] and ROI filed no reply.[15]

## Discussion

**A.     Reviewing an arbitration award**

The Federal Arbitration Act (FAA) permits any party to apply to the court to confirm, vacate, modify, or correct an arbitration award.[16] An award must be confirmed unless it is vacated, modified, or corrected.[17] "[T]he reform of arbitration awards, including the severe remedy of vacatur, is limited by those grounds established by Congress in the [FAA]."[18] An award may be vacated if: (1) it was procured by corruption, fraud, or undue means; (2) the arbitrator was biased or corrupt; (3) "the arbitrator[ was] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "the arbitrator[] exceeded [its] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[19]

"[A]rbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest

---

[14] ECF No. 9.

[15] *See generally* docket report.

[16] 9 U.S.C. §§ 9, 10, 11.

[17] *Hall St. Assocs., L.L.C., v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citing 9 U.S.C. § 9).

[18] *Sunrise Trust v. Morgan Stanley & Co.*, 2012 WL 4963766, at *3 (D. Nev. Oct. 16, 2012), *aff'd*, 552 F. App'x 685 (9th Cir. 2014) (quoting *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 647 (9th Cir. 2009); *see also Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004) ("When reviewing an arbitral award, courts accord an extraordinary level of deference to the underlying award itself"); *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) ("In fact, the standard of review of arbitral awards is among the narrowest known to the law.").

[19] 9 U.S.C. § 10(a).

disregard of law."[20] A finding of "manifest disregard . . . requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'"[21] "[T]o demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard [it]."[22] "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it."[23]

The standard for finding an award completely irrational "is extremely narrow and is satisfied only where [the arbitration decision] fails to draw its essence from the agreement."[24] "An award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions."[25] The reviewing court does not "decide the rightness or wrongness of the arbitrator['s] contract interpretation, only whether the panel's decision 'draws its essence' from the contract."[26] "Neither erroneous legal conclusions nor unsubstantiated factual findings justify

---

[20] *Schoenduve Corp. v. Lucent Tech.*, 442 F.3d 727, 731 (9th Cir. 2006).

[21] *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (quoting *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961) (internal quotations omitted)).

[22] *Id.*

[23] *Bosack v. Soward*, 586 F.3d 1096, 1104–05 (9th Cir. 2009) (quoting *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004)).

[24] *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461–62 (8th Cir. 2001)).

[25] *Bosack*, 586 F.3d at 1106 (quoting *McGrann v. First Albany Corp.*, 424 F.3d 743, 749 (8th Cir. 2005)); *see also Coast Trading Co., v. Pac. Molasses Co.*, 681 F.2d 1195, 1197 (9th Cir. 1982) (holding that an "arbitrator is confined to the interpretation and application of the parties' agreement" and that an "award is legitimate only so long as it draws its essence from the . . . agreement" (quoting *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 597 (1960))).

[26] *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991).

federal court review of an arbitral award under the statute[.]"[27]

**B.     The arbitrator's decision does not show a manifest disregard for the law.**

Two sentences after acknowledging that an arbitrator does not exceed its powers even if it misinterprets or misapplies the governing law, ROI argues that "[t]he [a]rbitrator exhibited a manifest disregard" for the law by misinterpreting and misapplying it and enforcing an illegal contract.[28] There are many fatal problems with this argument. First, misinterpreting and misapplying the governing law does not show a manifest disregard for it. Second, the arbitrator expressly found that ROI failed to prove that the contract was illegal, so by saying that the arbitrator enforced an illegal contract, ROI impermissibly attempts to relitigate the issue. Third, to show a manifest disregard for the law, ROI must show that the arbitrator knew the governing law and ignored it; but by arguing that the arbitrator misinterpreted and misapplied the governing law, ROI concedes that the arbitrator knew it and did not ignore it.

ROI's points are not merely illogical, they're meritless. The partial arbitration award shows that the arbitrator did not ignore the governing law but thoroughly applied it to the case before him.[29] The sole issue for the arbitrator to decide was whether the agreement was illegal, which hinged on whether it required Shaw to act as an unlicensed broker.[30] Because ROI contended that he acted as an unlicensed broker, the burden was on ROI to prove it.

The arbitrator noted a difference between "brokers" and "finders."[31] "A finder finds potential buyers or sellers, stimulates their interest, and brings parties together, while a broker

---

[27] *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003).

[28] ECF No. 7 at 4–5.

[29] ECF No. 7-2.

[30] *Id.* at 3.

[31] *Id.* at 4–5.

5

brings the parties to an agreement on particular terms."[32] The Securities Exchange Act of 1934 requires brokers to be licensed but not finders.[33] Shaw testified for himself and under cross examination that he acted as a finder and not as a broker.[34] ROI did not present any witnesses of its own.[35] The arbitrator reviewed the consulting agreement and found that it was "consistent with Shaw's simply providing introductions to business acquaintances who might be interested in investing in the business or giving general advice based on his years of running his own company."[36] The arbitrator also considered one email—admitted over objection that it constituted confidential settlement negotiations—that set forth the terms of a proposed settlement.[37] As part of those terms, Shaw would agree to commission-based payment for capital raised.[38] But the arbitrator concluded that a settlement was never reached, so it was not evidence that Shaw actually engaged in illegal brokerage activities.[39] The record is clear that the arbitrator knew the governing law, applied it, and came to a decision based on a thorough review of the evidence.

ROI next challenges the legal underpinnings of the arbitrator's analysis, arguing that "[a]lthough the [a]rbitrator's awards provide a deceptively coherent opinion, they are, in fact, based upon a hodgepodge of unpublished cases from various non-precedential jurisdictions that

---

[32] *Id.* at 5 (citing *Foundation Ventures, LLC v. F2g, Ltd.*, 2010 WL 3187294, at *6 (S.D.N.Y. Aug. 11, 2010)).

[33] *Id.* at 4–5.

[34] *Id.* at 11.

[35] *Id.*

[36] *Id.* at 9–10.

[37] *Id.* at 12.

[38] *Id.*

[39] *Id.* at 13.

invoke new and novel interpretations of law that are without binding precedent."[40] But ROI fails to offer any binding authority of its own. In fact, ROI offers its own "hodgepodge of unpublished cases from various non-precedential jurisdictions,"[41] and the arbitrator even relied on one of them in his finder-or-broker analysis.[42] ROI fails to show that the arbitrator knew the law and ignored it and thus fails to show that the arbitrator had a manifest disregard for the law.[43]

**C.     The arbitrator's decision was not completely irrational.**

ROI also argues that the arbitrator's decision was completely irrational, but it doesn't even supply a standard for what makes a decision "completely irrational." Instead, ROI summarily argues that it was irrational for Shaw to value 500,000 shares in ROI's restricted stock at $900,000 because the stock is "thinly traded, in an over-the-counter market, with very few willing buyers and sellers[.]"[44] But ROI bases this argument not on the arbitrator's decision but on Shaw's claim; ROI excludes from its motion the arbitrator's award or his reasoning for it.

The arbitrator's partial damages award makes clear that Shaw offered evidence showing how much the stock would be worth under different scenarios. Under one scenario, Shaw explained how he could have sold the stock over time at an average price of $1.85 per share, for a total of $925,000.[45] Under another, Shaw showed how he could have sold his stock over a longer

---

[40] ECF No. 7 at 1–2.

[41] *See* ECF No. 7 at 6 (citing *SEC v. Offill*, an unpublished case from the Northern District of Texas; *SEC v. Helms*, an unpublished case from the Western District of Texas; and *SEC v. Kramer*, a published opinion from the Middle District of Florida that cites to *SEC v. Hansen*, an unpublished case from the Southern District of New York).

[42] ECF No. 7-2 at 5–6.

[43] The arbitrator's finding that ROI failed to prove that the contract was illegal is sufficient to justify the arbitration award. So, I need not—and do not—reach ROI's arguments that it was not barred from asserting that Shaw acted as an unlicensed broker by a statute of limitations or the unclean-hands doctrine.

[44] ECF No. 7 at 12.

[45] ECF No. 7-2 at 16.

period of time at an average of $1.40 per share, for a total of $700,000.[46] Shaw also asserted that he would be entitled to interest at a rate of 5.25%.[47] ROI did not offer any evidence to rebut any of these points. And with no rebuttal evidence, the arbitrator found Shaw's conservative projection and asserted interest rate to be credible. The arbitrator therefore found that Shaw proved that he was entitled to $755,125 in damages.[48] Shaw also presented evidence of $103,109.57 in attorney's fees and $3,625 in costs, and ROI, once again, did not oppose.[49] Having not even attempted to rebut Shaw's evidence during arbitration, ROI cannot now show—under any standard—that the arbitrator's finding was irrational.

**D.     The arbitrator did not engage in misconduct.**

Finally, ROI argues that the arbitrator committed misconduct because he gave ROI only five days and three pages of 14-point, double-spaced font (inclusive of headers and footers) to rebut Shaw's post-hearing brief. Apparently, Shaw raised the statute-of-limitations and unclean-hands defenses for the first time in his post-hearing brief. ROI now claims that it was misconduct for the arbitrator to expect it to respond to those two new arguments within the prescribed time and page limits. But ROI did not request a page or time extension.[50] Plus, the arbitrator's decision was primarily based on ROI's failure to prove that the contract was illegal. Even if ROI had more time and pages to rebut Shaw's new arguments, it would not have made a difference to the arbitrator's decision. The arbitrator did not commit misconduct by first applying a rule evenly to both parties and then not relaxing it for one party without being asked to do so.

---

[46] *Id.*

[47] *Id.*

[48] ECF No. 7-2 at 17.

[49] ECF No. 7-3 at 3.

[50] ROI is clearly familiar with the possibility, however, because it asked for more time to respond to Shaw's petition for confirmation. ECF No. 4.

8

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Shaw's petition for confirmation of arbitration award **[ECF No. 1] is GRANTED**, and ROI's motion to vacate the arbitration award and dismiss the petition **[ECF No. 7] is DENIED**.

The **Clerk of Court** is directed to **ENTER JUDGMENT in favor of Seth Shaw and against ROI Land Investment, Ltd.** for $755,125 in damages, $103.109.57 in attorney's fees, and $3,625 in costs, for a **total amount of $861,859.67**.

The **Clerk of Court** is also directed to **CLOSE THIS CASE**.

DATED: March 1, 2018.

_____
U.S. District Judge Jennifer A. Dorsey